UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHELLE A. SCHENCK,[1]

       Plaintiff,

   v.

UNITED AIRLINES,

       Defendant.

_____

21-CV-659-LJV
DECISION & ORDER

On May 21, 2021, the *pro se* plaintiff, Michelle Schenck, commenced this action against her former employer, United Airlines ("United"), alleging race- and age-based discrimination. Docket Item 1 at 3-4. Four months later, Schenck filed an amended complaint withdrawing her race-based claim, Docket Item 10 at 7, and asserting a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as well as a claim for intentional infliction of emotional distress, *see id.* at 7-9. Schenck, who worked as a United flight attendant for more than twenty years, says that she was discriminated against and ultimately fired because of her age. *See id.*

On December 29, 2021, United moved to dismiss the amended complaint, arguing that this Court lacks personal jurisdiction over United, that this district is not a proper venue for Schenck's claims, and that, in any event, Schenck's amended complaint fails to state a viable claim.[2] Docket Item 20. On February 23, 2022,

_____

[1] The Clerk of the Court shall correct the caption accordingly.

[2] United also cited Federal Rule of Civil Procedure 12(b)(1) in its memorandum in support of its motion to dismiss, *see* Docket Item 20-3 at 11, but it did not otherwise address subject matter jurisdiction in that memorandum. Moreover, in its reply, United said that it had "not raise[d] any issues regarding subject matter jurisdiction in its initial

Schenck responded to the motion to dismiss, Docket Item 26, and on April 11, 2022, United replied, Docket Item 33.  Schenck then filed a "motion for the Court to enter an order giving [her] permission to file judicial notice of settled law and facts," which included more than 200 pages of exhibits.  Docket Items 38, 38-1, 38-2.  On June 10, 2022, United responded to that motion, Docket Item 41, and about two weeks later, Schenck replied, Docket Item 42.

For the reasons that follow, United's motion to dismiss will be granted unless Schenck amends her complaint to adequately plead personal jurisdiction.[3]  Schenck's motion for judicial notice is denied.

## FACTUAL BACKGROUND[4]

Schenck began working as a United flight attendant in March 1998.  Docket Item 10 at 7.  She worked for United until January 2020, when she was fired due to a "gross

---

motion papers."  *See* Docket Item 33 at 7 n.1.  Because this Court lacks personal jurisdiction over United, and because United apparently did not intend to make, or has withdrawn, any argument about subject matter jurisdiction, this Court does not pass on whether Schenck's claims are subject to dismissal under Rule 12(b)(1).  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (noting that a court may "choose among threshold grounds for denying audience to a case on the merits").

[3] Because Schenck has not sufficiently alleged that this Court has personal jurisdiction over United, this Court does not address United's arguments that venue is improper and that Schenck's claims fail on the merits.  *See Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989-90 (2d Cir. 2006) (summary order) (finding that "the district court erred in failing to determine whether it had valid personal jurisdiction over [the defendant] before proceeding to the merits of [the] claim"); *Seiden v. Schwartz, Levitsky, & Feldman LLP*, 2017 WL 2591785, at *4 n.4 (S.D.N.Y. June 14, 2017) (declining to address motion to dismiss for improper venue after finding that personal jurisdiction was not established).

[4] Unless otherwise noted, the following facts are taken from the amended complaint, Docket Item 10.  On a motion to dismiss under Rule 12(b)(2), a court "must construe the pleadings and affidavits in the light most favorable to [the] plaintiff,

misunderstanding" about comments that she made while working on a round-trip flight between New Jersey and London.  *Id.* at 8-9.

The flight that precipitated Schenck's firing left Newark Liberty International Airport on December 16, 2019; the United staff working the flight then spent a day in London before flying back to Newark.  *See id.* at 8.  Before the flight departed Newark, Schenck "checked[ ]in and introduced [herself] to [the seven] working flight attendants." *Id.*  That introduction "was not reciprocated," however, and Schenck "felt singled out and ignored."  *Id.*  Schenck was the oldest flight attendant on the trip.  *Id.*

Despite that frosty start, Schenck "worked well" with one of her co-workers during the flight; in fact, Schenck and that co-worker spent some time together in London during the layover.  *Id.*  The two went shopping and had dinner together, where they shared some "lighthearted conversation."  *Id.*  During that conversation, Schenck's co-worker "mentioned the mistreatment and lack of teamwork [that Schenck's] co-workers displayed towards [her]."  *Id.*

Before the return flight, Schenck "made a comment to [her] co-workers [about] the great layover time with [her co-worker] and remarked 'I had such a nice time with [him] yesterday, that boy even helped me hold my bags while I put my coat on, what a gentleman.'"  *Id.*  Another United employee became "upset" when she overheard that comment because she believed that Schenck had used a derogatory term to refer to her

---

resolving all doubts in [her] favor, and must accept the allegations in the [c]omplaint as true to the extent they are uncontroverted by [the] defendant['s] affidavits, which the [] court may also consider."  *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (alterations, citations, and internal quotation marks omitted).

co-worker, who is Black.  *See* Docket Item 1 at 9.[5]   Schenck "offered to apologize" and said that she was "unaware[]" of the racial connotations of the word "boy."  *Id.*

After a co-worker filed a complaint about the incident, Schenck was investigated by United.  *See id.*; *see also* Docket Item 10 at 8.  According to Schenck, United "failed [in] transparency" and "d[id] not have the correct facts" in its investigation.  Docket Item 10 at 8.  Schenck, on the other hand, was "forthcoming and apologized for a gross misunderstanding [about] the reference to a younger co-worker . . . as 'boy.'"  *Id.* at 8-9.  Nevertheless, Schenck was fired in early 2020.  *See id.* at 8.  Schenck says that United "terminated [her]" rather than imposing "a lighter penalty of suspension or counsel[ing]" because of her age.  *Id.* at 9.

Schenck alleges that she also suffered other mistreatment while working for United in Newark.  More specifically, she says that in July 2015, she "spoke to [the] Newark Inflight Supervisor[] and asked him how to get assigned to the 'designated crew' list."  *Id.* at 7.  She also asked "[w]hy [s]port [c]harter trips" were assigned to "younger junior co-workers."  *Id.*  The supervisor "was unable to answer [Schenck's] questions and referred [her] to speak to another [s]upervisor."  *Id.*  Although it is unclear what happened next, Schenck says that she "felt intimidated when [she] asked questions" because she was afraid of "being red flagged by United management."  *Id.*

---

[5] Because Schenck omitted many of the factual allegations contained in her original complaint from her amended complaint, this Court refers to the original complaint to fill in certain facts.  Schenck is advised that an amended complaint is intended to completely replace the prior complaint in a case and thus "renders [any prior complaint] of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  Schenck therefore should include all allegations that she wants this Court to consider in any second amended complaint.

Schenck raised other complaints about her work assignments in 2019. *See id*. at 7-8. For example, in July 2019, she asked the "Union Representative for Newark" why a charter trip for the New York Jets football team was "assigned one month in advance . . . to young flight attendants who are on '[r]eserves' on the '[f]light [l]oft'" and who have "less experience[]" than Schenck. *Id.* at 7. The representative referred Schenck to another supervisor, who "also is the Sports Charter Coordinator who assigns the '[d]esignated [c]rew' list." *Id.* The supervisor "did not address [Schenck's] question." *Id.*

Later in July 2019, Schenck asked the union representative why "[c]harter [t]rips were assigned to young junior '[l]ine holders'" even though Schenck's "system seniority" meant that she should "hold these charter trips." *Id.* at 8. Schenck also asked why "young junior '[r]eserve' flight attendants [were] assigned charter trips one month in advance." *Id.* The representative responded that "'all ball club charters are hand[-]picked by the Charter Coordinators.'" *Id.*

Schenck says that this policy of assigning charter trips to younger employees "had nothing to do with eligibility" but instead was based on the "lik[e]ability of younger [] employees." *Id.* at 7. And Schenck says that United "continually staffed less experienced younger aged co-workers with less seniority," which "violat[ed Schenck's] seniority and age." *Id.* Moreover, Schenck alleges that United "blocked [her] from the Flight Attendant App," which was United's "trip trading and trip pickup system." *Id.*

## LEGAL PRINCIPLES

"In order to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff[] must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (alterations omitted)

(quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)).

"This prima facie showing 'must include an averment of facts that, if credited by the

ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.*

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

In resolving a motion to dismiss for lack of personal jurisdiction, a court "construe[s] the

pleadings and affidavits in the light most favorable to [the] plaintiff[], resolving all doubts

in [her] favor." *Chloé*, 616 F.3d at 163 (quoting *Porina v. Marward Shipping Co.*, 521

F.3d 122, 126 (2d Cir. 2008)). But a court "will not draw argumentative inferences in the

plaintiff's favor, nor must [it] accept as true a legal conclusion couched as a factual

allegation." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir.

2013) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   UNITED'S MOTION TO DISMISS

"[A] court may exercise two types of personal jurisdiction over a corporate

defendant properly served with process."[6] *Brown v. Lockheed Martin Corp.*, 814 F.3d

619, 624 (2d Cir. 2016). First, if a corporate defendant is subject to general jurisdiction

in a forum state, a court may "adjudicate any cause of action against [it], wherever

arising, and whoever the plaintiff." *Id.* (citing *Chloé*, 616 F.3d at 164). If a corporate

defendant is not subject to general jurisdiction in a forum state, a court still may exercise

---

[6] United does not dispute that it was properly served in this case, although it does argue that Schenck's delay in effecting service renders her claims untimely. *See* Docket Item 20-3 at 32-35. Because Schenck's claims are subject to dismissal for the reasons stated below, this Court need not and does not address that argument.

jurisdiction over it if the plaintiff's claims "arise[] out of the defendant's activities in [the] state"—so-called "specific jurisdiction." *Id*. Because Schenck has not alleged facts sufficient to demonstrate general or specific jurisdiction over United here, her amended complaint is subject to dismissal.

### A.    General Jurisdiction

"A court may assert general jurisdiction" over a corporate defendant "to hear any and all claims against [it] when [its] affiliations with [a] State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[7] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  "[E]xcept in a truly exceptional case, a corporate defendant may be treated as 'essentially at home'" in only two states: its state of incorporation and the state where it has its principal place of business.  *See Brown*, 814 F.3d at 627 (citation and internal quotation marks omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) ("not foreclos[ing] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" (citation omitted)).

The parties agree that United is incorporated in Delaware and has its principal place of business in Illinois.  Docket Item 20-2 at ¶ 11; Docket Item 26 at 6.  So neither

---

[7] Because United is not subject to general jurisdiction in New York under the Due Process Clause, this Court does not address whether New York State law commands the same result.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

of the "paradigm bases for general jurisdiction" are present here.  *See Daimler*, 571 U.S. at 137 (alterations omitted).

Nor is this the sort of "truly exceptional" case where United's in-state activities would make it subject to general jurisdiction in New York.  *See Brown*, 814 F.3d at 627 (citation and internal quotation marks omitted).  In one such exceptional case, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the Supreme Court found that Ohio state courts could exercise general personal jurisdiction over a foreign mining company that was neither incorporated, nor had its principal place of business, in Ohio.  *See id.* at 439.  But that was only because the company had "ceased its mining operations" in the Philippines and its president "moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities."  *Daimler*, 571 U.S. at 129.  In other words, despite the company's foreign registration and operations, Ohio became "the corporation's principal, if temporary, place of business."  *See id.* at 130 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 n.11 (1984)).  Here, by contrast, Schenck has not pleaded anything suggesting that United maintained something akin to a *de facto* principal place of business in New York.[8]  So United is not subject to general jurisdiction in New York.

---

[8] Schenck seems to argue that by registering in New York as a foreign corporation, United consented to jurisdiction in New York.  *See* Docket Item 26 at 5. But the Second Circuit has "h[eld] that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020); *see also Aybar v. Aybar*, 37 N.Y.3d 274, 177 N.E.3d 1257 (2021) (New York Court of Appeals reaching the same conclusion).  So United's registration as a foreign corporation in New York does not have any effect on general personal jurisdiction here.

**B.     Specific Jurisdiction**

Because United is not subject to general jurisdiction in New York, Schenck's claims can proceed in this Court only if they relate to United's in-state conduct.  To determine whether it has specific jurisdiction over a defendant, a court first "determine[s] whether there is jurisdiction over the defendant under the relevant forum state's laws." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  Then, the court "determine[s] whether [the] exercise of jurisdiction under these laws is consistent with federal due process requirements."  *Id.*

New York Civil Practice Law and Rules section 302, the New York State long-arm statute, outlines the circumstances in which a court may exercise specific jurisdiction over a nonresident defendant.  As relevant here, an out-of-state defendant is subject to personal jurisdiction in New York if the defendant "commits a tortious act without the state causing injury to person or property within the state" and one of two conditions is met.  *See* N.Y. C.P.L.R. § 302(a)(3); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84-85 (2d Cir. 2001) (analyzing unlawful termination claim under section 302(a)(3)); *Lear v. Royal Caribbean Cruises Ltd.*, 2021 WL 1299489, at *10-11 (S.D.N.Y. Apr. 7, 2021) (same).  More specifically, the out-of-state defendant must "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state" or "expect[] or [] reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce."[9]  N.Y. C.P.L.R. § 302(a)(3).

_____

[9] None of the other possible bases for long-arm jurisdiction under section 302(a) appear to be relevant here.  Schenck's claims do not arise out of a business transaction

In evaluating whether an out-of-state defendant "caus[ed] injury to person or property" in New York, *see* N.Y. C.P.L.R. § 302(a)(3), a court "appl[ies] the 'situs-of-injury' test[,] which asks where the 'original event which caused the injury' occurred." *United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V.*, 509 F. App'x 48, 50 (2d Cir. 2013) (summary order) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker*, 261 F.3d at 209 (alterations omitted). And "in cases of unlawful termination," the Second Circuit "has located the situs of the injury at the place of employment." *United Mobile Techs.*, 509 F. App'x at 50 (citing *DiStefano*, 286 F.3d at 84-85).

Here, all conduct that Schenck challenges occurred while she was employed in New Jersey. *See* Docket Item 10 at 7-9. More specifically, Schenck alleges that United "unlawful[ly] terminat[ed]" her while she was working in New Jersey. *See id.* at 9. And Schenck's other allegations about alleged discrimination relate to events that occurred while she was working in Newark. *See id.* at 7-8 (detailing conversations with United

---

in New York, *see* N.Y. C.P.L.R. § 302(a)(1), a tortious act that United committed while physically present in New York, *see id.* § 302(a)(2), or real property located in New York, *see id.* § 302(a)(4). *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) ("To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." (alterations, citation, and internal quotation marks omitted)); *Bank Brussels Lambert*, 171 F.3d at 790 ("[A] defendant's physical presence in New York is a prerequisite to jurisdiction under [section] 302(a)(2)); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) ("Under [section] 302(a)(4), it is not enough for the property to be related in some way to the parties' dispute; the plaintiff's cause of action must arise out of the fact of ownership, use[,] or possession of New York realty." (alterations, citation, and internal quotation marks omitted)). If Schenck believes that some other basis for personal jurisdiction is relevant here, she should allege facts supporting that basis in any second amended complaint.

supervisors based in Newark). So the situs of the injury here is New Jersey, not New

York, and United therefore is not subject to personal jurisdiction in this Court under

section 302(a)(3).[10] *See United Mobiles Techs.*, 509 F. App'x at 50; *see also*

*DiStefano*, 286 F.3d at 85 ("[A plaintiff's] mere residence in New York is insufficient to

establish personal jurisdiction over a nondomiciliary defendant under [section] 302(a)(3)

. . . .").

For those reasons, Schenck has not alleged how United is subject to specific

jurisdiction under the New York State long-arm statute. Because this Court lacks

personal jurisdiction over United under New York State law, the Court does not pass on

whether exercising jurisdiction over United would comport with the Due Process Clause.

*See Bank Brussels Lambert*, 171 F.3d at 784.

## II. SCHENCK'S MOTION FOR JUDICIAL NOTICE

After United's motion to dismiss was fully briefed, Schenck filed a "motion for the

Court to enter an order giving [her] permission to file judicial notice of settled law and

facts." Docket Item 38 (capitalization removed). Schenck attached some 200 pages of

exhibits that purportedly are subject to judicial notice, including documents from her

employment with United, other United documents dating back to the 1970s, and various

federal statutes and case law. *See* Docket Items 38, 38-1, 38-2. Schenck also

advanced new substantive arguments in support of her claims, *see* Docket Item 38 at 1-

---

[10] Schenck's intentional infliction of emotional distress claim, which hinges on the same conduct as her employment discrimination claim, does not change that result. *See Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 807 (S.D.N.Y. 2015) (finding no personal jurisdiction under section 302(a)(3) where "all of the critical events concerning [the plaintiffs'] intentional infliction of emotional distress claim occurred in Costa Rica or North Carolina").

14, even though this Court previously told her that she could not file a further response to the motion to dismiss, *see* Docket Item 37.

"A court may take judicial notice of a fact that is 'not subject to reasonable dispute' either because it is 'generally known within the trial court's territorial jurisdiction' or because it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *QED, LLC v. Faber Daeufer & Itrato, P.C.*, 2021 WL 707073, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting Fed. R. Evid. 201(b)). Schenck does not say how many of the exhibits she attached are subject to judicial notice; in fact, many of Schenck's exhibits seem related to legal arguments rather than judicially noticeable facts. Nor is it clear how any of those documents show that this Court has personal jurisdiction over United.

In any event, in light of her *pro se* status, Schenck may amend her complaint to correct the deficiencies noted above. *See Shibeshi v. City Univ. of N.Y.*, 531 F. App'x 135, 136 (2d Cir. 2013) (summary order) ("[D]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend . . . ."). If Schenck wants this Court to consider additional facts, allegations, or claims, she should include them in her second amended complaint. And Schenck should include any arguments that she wishes to raise in a response brief in opposition to any motion to dismiss, not in a separate motion for judicial notice.[11]

---

[11] Similarly, Schenck cannot amend her complaint in a response brief to a motion to dismiss. *See* Docket Item 26 (including new factual allegations and theories of relief); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers."). Again, Schenck should include any factual allegations or legal theories that she wants this Court to consider in any second amended complaint.

**<u>CONCLUSION</u>**

For the reasons stated above, United's motion to dismiss will be granted unless, within 45 days of the date of this order, Schenck files a second amended complaint that demonstrates personal jurisdiction over United.  United may answer, move against, or otherwise respond to the second amended complaint within 30 days of its filing.  If Schenck does not file a second amended complaint within 45 days of the date of this order, then her amended complaint will be dismissed and the Clerk of the Court shall close the case without further order.  Schenck's motion for judicial notice is denied.

SO ORDERED.

Dated:   February 22, 2023
         Buffalo, New York


  */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

13